UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

In re:

    MARIJA SALOV,

              Debtor.

Objection to and Affidavit in Opposition of Order to Show Cause

*Case No.: 13-37269 (CGM)*
**CHAPTER 13**

STATE OF NEW YORK )
COUNTY OF MONROE ) ss:

David P. Case, the undersigned, an attorney admitted to practice in the Courts of the State of New York, as well in the United States Bankruptcy Court, Southern District of New York deposes and says:

1. That deponent is a partner of Fein, Such & Crane, L.L.P., hereby appears for and on behalf of Federal National Mortgage Association (hereinafter FNMA), with respect to the Order to Show Cause returnable on March 11, 2014, related to real property located at 750 Route 292, Holmes, New York (hereinafter the "premises") and is familiar with all of the facts and proceedings theretofore and makes this affidavit with knowledge based upon a review of the files, paperless and otherwise, maintained by his office, as well as business records, and information provided by Mortgagee, except those stated upon information and belief.

2. I make this affidavit in opposition to the Order to Show Cause seeking to issue actual and punitive damages against FNMA.

3. In sum and substance, as shall be discussed herein, the application:

    a) for punitive damages should be denied because FNMA, through its counsel, relied in good faith upon Bankruptcy Court precedent and State Law to determine that i) no possessory interest transferred into the estate, ii) that the possessory rights of Marija

Salov (hereinafter "Salov" of "Debtor") had been adjudicated pre-petition, and iii) the automatic stay did not apply;

      b) any damages awarded against FNMA ought to be offset and reduced by an amount between $7,238.70 and $26,427.79 for FNMA's good faith in waiting to bring a motion, to confirm no stay exists or relief from that stay, until this matter is resolved which has given Salov at least 90 days of additional free living at the premises;

      c) an actual damages award against FNMA based upon Attorney Cowle's fees in bringing the motion against Nationstar should be denied because a) FNMA should not be charged with fees based upon Debtor's original motion was made against the wrong party; b) there is no Court Order holding FNMA in violation the automatic stay; and c) based upon the nexus of State law regarding foreclosures and bankruptcy law, the application for a Writ of Assistance under N.Y. R.P.A.P.L. § 221 should not be deemed a stay violation.

Brief State Court History

3.    When mortgagors Sandy and Ante Salov defaulted paying their mortgage for the November 2009 mortgage payment, a foreclosure action was commenced on January 31, 2011, in Dutchess County Supreme Court under Index Number 2011-649. Copies of the Notice of Pendency, Summons, and Complaint are annexed hereto as Exhibit "A".

4.    Marija Salov was sued and served as a "Jane Doe" person who may have had an occupancy interest in the premises.

5.    Only Sandy Salov answered the Complaint. A copy of Sandy Salov's Answer is annexed hereto as Exhibit "B".

13-37269-cgm    Doc 68    Filed 03/05/14    Entered 03/05/14 17:02:57    Main Document
Pg 3 of 14

6. The Court granted Judgment of Foreclosure and Sale on January 16, 2013. A copy of the Judgment of Foreclosure and Sale is annexed hereto as Exhibit "C".

    a. The rights of the parties were adjudicated in the Judgment of Foreclosure and Sale:

    "ORDERED, ADJUDGED AND DECREED, that the purchaser or purchasers at such sale <u>be let into possession on production or delivery of the Referee's Deed</u>; and it is further

    "ORDERED, ADJUDGED AND DECREED, that each and all of the defendants in this action and all persons claiming under them, or any or either of them, after the filing of such Notice of Pendency of this action, be and they hereby are, <u>barred and foreclosed of all right, claim</u>, lien, title interest and equity of redemption in their said mortgage premises and each and every part thereof…" See Exhibit "C" (emphasis added).

7. The premises were struck down in a publically noticed foreclosure auction on June 3, 2013.

8. FNMA successfully purchased the premises at the foreclosure sale. Copies of the Referee's Deed and Referee's Report of Sale are annexed hereto as Exhibit "D".

9. FNMA referred the matter back to have the occupants of the premises removed.

10. Accordingly, notices pursuant to the Protecting Tenants at Foreclosure Act and N.Y. R.P.A.P.L. § 1305 (hereinafter 90-day notice) were sent for service and were served on July 3, 2013. Copies of the 90-day notices and Affidavits of Service thereon are annexed hereto as exhibit "E". Attorney-Certified copies of the Referee's Deed were attached to the notices.

11. Ten-Day Notices to Quit were prepared and sent for service upon the occupants of the premises. Attorney-Certified copies of the Referee's Deed were attached to the notices. The Notices to Quit were served on October 2, 2013. Copies of the Notices to Quit and Affidavits of Service thereon are annexed hereto as Exhibit "F".

12. On October 1, 2013, Marija Salov called Counsel and advised that she paid for improvements to the premises, that she wanted her money back, and made veiled threats of retribution based upon the mother of her daughter-in-law being a Supreme Court Judge in New York State. She would not identify the name of the Judge or the County where that judge presides.

13. The next day, Salov's daughter-in-law called advising us that she was not representing her mother-in-law but was looking for someone to represent her.

14. On October 7, 2013, Marija Salov called again and confirmed she was not represented by Counsel, yet, and requested until January 2014 to vacate the premises.

15. On October 10, 2013, Marija Salov left a voice mail message stating that she retained an attorney and that we "will no longer be able to bother [her]."

16. On October 15, 2013, Counsel's office received a call from a paralegal by the name of "Jennifer" from Attorney Cowle's office advising of the Bankruptcy filing.

17. Counsel reviewed the Bankruptcy Petition, saw no reference to FNMA, and determined that no interest in the subject real property could enter into the bankruptcy estate pursuant to § 541 and, thus, no automatic stay applied for reasons including the discussion below.

18. On October 17, 2013, Counsel prepared a post-foreclosure motion for a Writ of Assistance pursuant to N.Y. R.P.A.P.L. § 221, and sent same for service and filing. A copy of the Motion, without exhibits since they are already annexed hereto, is annexed hereto as Exhibit "G".

19. The motion for Writ of Assistance was withdrawn on November 19, 2013, as a matter of precaution. A copy of the letter withdrawing the motion is annexed hereto as Exhibit "H".

<u>Insofar as Fannie Mae and its Counsel reasonably relied on the nexus of New York State Law, Bankruptcy Law, and precedent, no punitive damages should be issued because any stay violation was not willful, not malicious, and was not based in bad faith.</u>

20. Section 362(a) "stays any act to obtain possession of property <u>of the estate</u>… obtained before the commencement of the bankruptcy case… The term "property of the estate" is defined in 11 U.S.C. § 541, which provides that the estate is comprised of all legal and equitable interests of the debtor in property as of the commencement of the case. Thus, the automatic stay does not operate to enjoin actions related to property in which the debtor no longer has an interest at the time of the filing of the petition." *In re Cohoes Terminal*, 70 B.R. 214 (S.D.N.Y. 1987) *aff'd* 831 F. 2d 283 (holding that Debtor lost her rights to possession of the premises prior to the Bankruptcy filing and that naked possession does not become part of the estate). (emphasis added, quotations omitted).

21. Even where the automatic stay exists "the stay of an act against <u>property of the estate</u> under subsection (a) of this section continues until such property is no longer property of the estate." 11 U.S.C. § 362(c)(1) (emphasis added).

22. The definition of "property of the estate" in § 362 is defined by 11 U.S.C. § 541 and the debtor must possess a "legal or equitable interest" in the *res* for the stay to apply. *See In re Rodgers*, 333 F.3d 64 (2d Cir. 2003).

23. "Property interests are created and defined by state law… there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding." *Butner v. United States*, 440 U.S. 48, 55 (1979).

24. "Given the wide scope of [the definition of "all legal or equitable interests"], the bankruptcy estate includes nearly all of the debtor's property that is available for

- 5 -

distribution to creditors. The Bankruptcy Code, however excludes certain property from the debtor's estate…" *Bloch v. Bloch*, 2010 U.S. Dist. LEXIS 99891 (E.D.N.Y. 2010)

25. There is a difference between having naked *possession* of real property and having a *possessory interest* in real property. It is clear, and no citation need be provided, that having a viable possessory *interest* passes into the Bankruptcy Estate and is protected by the stay.

26. However, mere naked possession without a possessory interest does not pass into the bankruptcy estate and the automatic stay does not apply. *In re Rodgers*, 333 F.3d 64 (2d Cir 2003) (Disagreeing with debtor's argument that mere possession of title alone is sufficient to bring the property into the estate); *Cook v. Huey*, 2013 U.S. Dist LEXIS 143707 (N.D.N.Y 2013)(Debtors asserted that "possession of the residence following foreclosure constitutes an equitable interest sufficient to invoke the automatic stay" but the automatic stay did not apply because the debtor did "not have any legal or equitable interest in their residence which would have allowed the property to be brought into the bankruptcy estate.")

27. "[T]he critical inquiry is whether she had, under state law, any legal or equitable ownership interest that survived the auction." *In re Rodgers*, 333 F.2d 64, 68 (2d Cir. 2003).

28. "It is well established that under New York law, a debtor's… interest in real property is extinguished by a foreclosure sale." *In re Cerrato*, 2014 Bankr. LEXIS 312 (Bankr. E.D.N.Y.2014) *citing Norwest Mtge., Inc., v. Brown*, 35 A.D.3d 682 (N.Y. App. Div. 2006); *GMAC Mortg. Corp. v. Tuck*, 299 A.D.2d 315 (N.Y. App Div 2002); *United Capital Corp. v. 183 Lorraine St. Assocs.*, 251 A.D.2d 400 (N.Y. App. Div. 1998); *see*

*also In re Ghosh*, 38 B.R. 600, 602 (Bankr. E.D.N.Y. 1984); *In re Butchman*, 4 B.R. 379 (Bankr. S.D.N.Y. 1980)(All rights to the premises terminate and nothing passes into the Bankruptcy Estate except the right to claim surplus money proceeds, if any); *Cook v. Huey*, 2013 U.S. Dist LEXIS 143707, 12-cv-1713 (N.D.N.Y. 2013)("A valid foreclosure sale took place prior to the filing of the [debtor's] bankruptcy petition and divested them of any legal or equitable rights to the property… Accordingly, the Bankruptcy Court did not err in finding that the [debtor's] <u>residence is not protected under the automatic stay</u>…").(emphasis added)

29. "When a debtor's legal and equitable interests are terminated prior to the filing of the petition with the Bankruptcy Court that was intended to preserve the Debtor's interest in such property, the Bankruptcy Court cannot cultivate rights where none can grow." *In re Butchman*, 4 B.R. 379, 381 (S.D.N.Y. 1980).

30. As matter of state law, the mere "naked possession" of real property after the interest has been foreclosed out, for example where there is no landlord-tenant relationship, there is not a sufficient interest to pass into the bankruptcy estate warranting protection of the stay. *See Bell v. Alden Owners, Inc.*, 199 B.R. 451 (S.D.N.Y. 1996)(Holding the automatic stay does not apply to protect the occupant where there is no landlord-tenant relationship); *In re Island Helicopters, Inc.*, 211 B.R. 453 (Bankr. E.D.N.Y. 1997)(A debtor with naked possession which is wrongful, has minimal value to the estate and may not serve as the basis of a reorganization effort.); *Fitz Pal v. International Pipe Fabrication*, 188 Misc. 2d 687 (Dist. Ct. 2001)("courts have ruled that "naked possession" is of "no value" to the debtor's estate and is therefore insufficient to invoke the automatic stay protections of the Bankruptcy Code").

31. The mere naked possession, without any interest that surviving a foreclosure sale, is "not enough, however, to be of value to the bankruptcy estate to invoke the automatic stay provisions of the Bankruptcy Code." *Chase Manhattan Mtge. Corp. v. Nieves*, 5 Misc. 3d 1001 (Sup. Ct. Queens Co. 2004); *see also Cook v. Huey*, 2013 U.S. Dist LEXIS 143707, 12-cv-1713 (N.D.N.Y. 2013)("The Cooks do not assert a legal interest in the property. Instead, they assert that their possession of the residence following foreclosure constitutes an equitable interest sufficient to invoke the automatic stay… the Cooks do not have any legal or equitable interest in their residence which would have allowed the property to be brought into the bankruptcy estate.").

32. By state law, once the possessory interest is terminated nothing remains for an automatic stay in bankruptcy to prohibit. *Radol v. Centeno*, 165 Misc.2d 448 (N.Y. Civ. Ct. 1995).

33. "Since the automatic stay endemic to a bankruptcy proceeding does not operate to enjoin actions respecting property in which the Debtor… no longer has an interest, the filing of a bankruptcy petition by the [occupant] does not bring the holdover proceeding to a halt." *Little v. Bright Holding Corp.*, 155 Misc. 2d 686 (N.Y. Civ Ct 1992) *quoting In re Cohoes Indus. Terminal*, 70 B.R. 214. (quotations omitted).

34. Moreover, applying for a post-foreclosure Writ of Possession after the bankruptcy filing was not a violation of the stay. *Wolffing v. Decision One Co., LLC.*, 2012 Bankr. LEXIS 3219 (Bankr. Vt. 2012)(Purchaser filed an application to a Judge for a Writ in Vermont after the Bankruptcy filing. The Bankruptcy Court held that the application with the Court was ministerial in nature and not subject to the stay.)

35. The purchaser at a foreclosure sale is entitled, under N.Y. R.P.A.P.L. § 221 to a writ of assistance where defendant was notified of the sale. *Tri-Land Properties v. 115 West 28th Street Corp.* 267 A.D.2d 142 (1st Dept. 1999).

36. While N.Y. R.P.A.P.L. § 221 gives the state court some discretion to hold the occupant who refuses to quit the premises in contempt of court and "may require the sheriff to put [the purchaser at foreclosure] into possession" refusal to grant the writ or giving an indefinite stay on the execution of the Writ are improper abuses of that statutory discretion. *Kilpatrick v. Argyle Co.*, 199 A.D. 753 (1st Dept. 1922); *Mykap Realty Corp. v. Goodman*, 5 A.D.2d 780 (2d Dept. 1958)(Further holding that the Court, per statutory discretion can stay the execution for 30 days).

    a. In essence, granting the Writ is a ministerial process, like Vermont's, and the State Court's discretion is limited to providing the occupants a brief respite in enforcement of the Writ. *Wolffing v. Decision One Co., LLC.*, 2012 Bankr. LEXIS 3219 (Bankr. Vt. 2012)

37. Vital to the determination of whether or not the contemptuous holdover possession of the real property becomes part of the Bankruptcy Estate is whether the debtor can redeem her interest in the premises. In this case, Marija Salov was not an owner of the premises. Salov has not provided any proof that she had any contractual relationship that could be redeemed through the bankruptcy. The Bankruptcy schedules list Nationstar as an unsecured creditor due to foreclosure of an unknown amount.

38. There is absolutely no interest that Salov can redeem, default that can be cured, or relationship with FNMA that is affected through the Chapter 13 bankruptcy.

39. Moreover, Debtor merely holds naked possession of the premises. Her possessory rights were foreclosed out through the foreclosure auction and Judgment of Foreclosure and Sale. See Exhibits "C" and "D".

40. This is not a situation where, like *In re Dominguez*, 312 B.R. 499 (Bankr. S.D.N.Y. 2004), the creditor violated the stay by continuing a court process to determine and finalize the foreclosure of title of the debtor. In *Dominguez*, a stay violation occurred when the City of Newburgh continued with a Court process to obtain a *judgment* to strip away debtor's title ownership of real property.

    a. The matter at bar does not require a reversal or modification of *Dominguez* since the title and possessory rights *Dominguez* had not been severed prior to the bankruptcy petition whereas the possessory rights of Salov where determined, foreclosed, and severed pre-petition. *Dominguez* fits squarely within the body of law relied upon.

41. Punitive damages ought not to be awarded against FNMA because the reasonable interpretation and reading of the body of law at the nexus of New York State Foreclosure practice and the Bankruptcy Code reasonably leads to the following legal conclusions:

    a. Once a foreclosure sale is completed, as a matter of New York State Law, there are no surviving legal or equitable rights in the mere naked possession of the premises;

    b. Without having any legal or equitable rights in the premises, a person filing for bankruptcy after the sale has nothing to pass into the bankruptcy estate; and

c. Without an interest passing into the bankruptcy estate and having no interest through the mere naked possession of the real property foreclosed, no automatic stay applies.

42. If there was no requirement that an interest pass into the bankruptcy estate to invoke the automatic stay, then cases that discuss said requirement would have all ruled that the stay applied. If the clear import of what passes into the bankruptcy estate was irrelevant because of a continuation, including the issuance or employment of process against the debtor under § 362(a)(1), then the full body of precedent and case law from Bankruptcy and District Courts in all four districts of New York plus the Second Circuit Court of Appeals would not exist.

43. Even if FNMA violated the automatic stay any such stay violation was based upon a good faith reliance of duly established precedent.

44. For punitive damages to apply, assuming there was a stay violation, there needs to be a showing of bad faith or maliciousness. *In re Crawford*, 476 B.R. 83 (S.D.N.Y. 2012).

45. "Even callous disregard is an insufficient basis upon which to award punitive damages because it does not rise to the level of bad faith or maliciousness. *Id. quoting In re Adomah*, 368 B.R. 134 (S.D.N.Y. 2007).

46. It is respectfully submitted that FNMA, through its Counsel, proceeded without bad faith or maliciousness based upon a good faith and reasonable interpretation of the body of law as discussed above.

47. It is respectfully submitted that any and all punitive damages ought to be denied.

<u>There has been no Order or award against FNMA for a stay violation; FNMA ought not to be charged with fees resulting from the erroneous application against Nationstar.</u>

48. Debtor brought the first Order to Show Cause against Nationstar, not FNMA.

- 11 -

49.  Debtor did not serve FNMA with the first Order to Show Cause.

50.  The Bankruptcy Petition and the Creditor Matrix are bereft of any mention of FNMA, the party who should have been noticed. See Exh.s "D", "E", and "F".

51.  The purchaser at a foreclosure sale is allowed to apply for a Writ of Assistance, in the foreclosure action, under N.Y. R.P.A.P.L. § 221.

52.  Debtor's Counsel was advised in papers and in Court that Nationstar had nothing to do with the debtor or the post-foreclosure Writ of Assistance. Finally, this Court stated, "It's not the caption, it's what [is] in the body. So it's not Nationstar, it's what [is] in the body… So you don't have the correct other side" See Debtor's Exh. "B" pgs. 4-5.

53.  In debtor's application against Nationstar, debtor requested $2,550.00 in attorneys' fees as actual damages. Debtor now seeks $5,050.00 for the current motion, the motion against Nationstar, and for refusing see that time was being wasted pursuing a party who had absolutely no involvement after the foreclosure sale.

54.  FNMA should not be penalized for the fees debtor incurred because the first Order to Show Cause was made against the wrong party and not appropriately served. See Debtor's Exh. "B" at pages 6 and 7 ("You have no[t] served Fannie Mae… you have to serve the party that is going to be held liable. Right now, Fannie Mae, hasn't been served.")

55.  There has been no finding that Fannie Mae violated the automatic stay. See Defendant's Exh. "B" at pages 4 ("Maybe the stay is violated, but what was not decided is what New York State law basically says.") and 7 ("It may not be $2,500. If they violated a stay, you are leaving it up to me to see if [there are] not some punitives here…")(emphasis added).

56. There is no Order holding FNMA in violation of a stay. It is respectfully submitted that the original Order to Show Cause did not obtain jurisdiction over FNMA. Accordingly, an application for actual damages against FNMA is premature.

57. Based upon the foregoing discussion, FNMA should not be charged with actual damages on a stay violation, particularly for the time spent on the erroneous motion against Nationstar.

<u>Any damages should be off-set by the debtor's free use of the premises.</u>

58. As a showing of good faith, no motion to confirm that no stay exists or, in the alternative modify/lift the stay, has been filed.

59. The debtor has received the benefit of rent/mortgage/tax/insurance-free living at the premises for at least 90 days.

60. FMNA bought the premises through foreclosure sale on June 3, 2013, for $427,010.99. See Exh. "D".

61. Based upon the winning bid at foreclosure sale, the *per diem* loss of the use of the premises at the original Note rate of interest of 6.875% is $80.43.

62. Based upon the winning bid at foreclosure sale, the *per diem* loss of the use of the premises at the State judgment rate of 9% is $105.29.

63. Debtor has gained the benefit of use of the property at a minimum of $7,238.70. Debtor's gain through use of the premises, at the judgment rate, is $9,476.10.

64. It is respectfully submitted that the last ninety (90) days of free use of the premises has already provided the debtor a benefit of a minimum of $7,238.70.

65. Debtor's free use of the premises from the July 3, 2013, delivery of the Referee's Deed (Exh. "E") on until March 11, 2014, (251 days) has a value of $20,187.93 (at the Note rate) and $26,427.79 (at the Judgment rate).

66. Accordingly, should this Court award any damages as against FNMA, said damages ought to be offset by no less than $7,238.70.

## CONCLUSION

67. Debtor's naked possession of the premises is insufficient to gain the benefit of the automatic stay.

68. Even if there was a stay violation, FNMA should not be charged with the fees of Debtor's Counsel for work on a motion against the wrong party.

69. Even if there was a stay violation by FNMA, damages should be denied because of a good faith reading and interpretation of the nexus of State law and Bankruptcy law, that was not malicious or in bad faith, and does not rise to the level of punitive damages.

70. Any damages should be off set by the debtor's free use of the premises.

71. Based upon the foregoing, Debtor's application should be denied.

WHEREFORE, your deponent respectfully prays for an order denying debtor's motion in its entirety and any further relief the court may deem appropriate.

Dated:  March 5, 2014

                                           /s/ David P. Case, Esq.
                                           David P. Case, Esq.

Sworn to before me this
5th day of March, 2014

/s/ Nichole Lanae Thomas
Notary Public