**FOR PUBLICATION**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
                                                :      Chapter 13

In re:                                        :

                                               :      Case No. 13-37269 (CGM)

      Marija Salov,                             :

                                               :

                                Debtor.    :

                                               :
-----------------------------------------------------------X

## MEMORANDUM DECISION FINDING A VIOLATION OF THE AUTOMATIC STAY AND AWARDING DAMAGES

**A P P E A R A N C E S:**

Law Offices of Rick Cowle
95 Gleneida Ave.
Carmel, NY 10512
*Attorneys for the Debtor*
       By: Rick Cowle, Esq.

Fein Such & Crane, LLP
28 East Main St., Suite 1800
Rochester, New York 14614
*Attorneys for Federal National Mortgage Association*
       By: David Case, Esq.

Sandelands Eyet LLP
1545 U.S. Highway 206, Suite 304
Bedminster, NJ 07921
*Attorneys for NationstarMortgage , LLC*
       By: Matthew Eyet, Esq.

**CECELIA G. MORRIS**
**CHIEF UNITED STATES BANKRUPTCY JUDGE**

       The Debtor filed a motion for contempt by Order to Show Cause against Federal National

Mortgage Association ("FNMA") and Nationstar Mortgage, LLC ("Nationstar") alleging a

violation of the automatic stay pursuant to 11 U.S.C. § 362(a)(1) and 11 U.S.C. § 362(a)(3). The asserted violation arises from the issuance of a post-petition summons and complaint seeking a writ of assistance where the parties were notified of the bankruptcy filing. For the reasons set forth in this memorandum decision, the Court finds that a violation of the automatic stay did occur and awards damages.

## Jurisdiction

This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1334(a), 28 U.S.C. § 157(a) and the Amended Standing Order of Reference signed by Chief Judge Loretta A. Preska dated January 31, 2012. This is a "core proceeding" under 28 U.S.C. § 157(b)(2)(A) (matters concerning the administration of the estate); (G) (motions to terminate, annul, or modify the automatic stay).

## Background[1][2]

The Debtor resides at 750 Route 292, Holmes, NY 12531 ("Property"). *See* Joint Stmt. ¶ 1, ECF No. 83. The Debtor's relatives, Sandy and Ante Salvo, mortgaged the Property. *Id*. The Debtor's relatives defaulted on their mortgage loan held by Nationstar. *Id.* ¶ 2-3. On January 16, 2013, Dutchess County Supreme Court granted a Judgment of Foreclosure and Sale. *Id.* ¶ 5, Ex. A. FNMA purchased the Property at a foreclosure sale on June 3, 2013. *Id.* ¶ 6, Ex. B. The Referee's Deed declared that the transfer of the Property to FNMA had the effect of "foreclosing the mortgage," thereby terminating Nationstar's interest. *Id.* ¶ 7. In seeking possession of the Property, notices to vacate were served on July 3, 2013. *Id.* ¶ 8, Ex. C. A few months later, ten-day notices to quit were prepared and sent for service upon the occupants. *Id.* ¶ 10, Ex. D. The

---

[1] All references to ECF are from case number 13-37269 unless otherwise indicated.
[2] All facts are taken from the Statement of Undisputed Facts Between FNMA, NationStar and Debtor ("Joint Stmt.") unless otherwise indicated. *See* ECF No. 83.

law firm of Fein, Such & Crane LLP ("Fein Such") represented Nationstar in the foreclosure action and FNMA in the writ of assistance action (collectively, the "Creditors"). *Id.* ¶¶ 4, 9, 16.

On October 11, 2013, approximately one week after being served with the ten-day notice, the Debtor filed for chapter 13. *Id.* ¶ 12. On October 15, 2013, Debtor's counsel called Creditors' counsel advising them of the Debtor's filing. *Id.* ¶ 14. On October 16, 2013, Debtor's counsel sent an email advising Creditors' counsel of the same. *Id.* ¶ 15., Ex. E. On October 17, 2013, Nationstar, by its attorneys, filed a motion for a post-foreclosure writ of assistance and sent the same for service upon the Debtor. *Id.* ¶ 16, Ex. F. The caption of the motion named Nationstar as the plaintiff, even though its interest terminated on June 3, 2013. *Id.* ¶ 17, Ex. F. The body of the motion named FNMA as the party taking action. *Id*. Neither party applied to this Court for relief from the automatic stay.

On November 8, 2013, counsel for the Debtor faxed a letter to Creditors' counsel stating that Creditors were in violation of the automatic stay. *Id.* ¶ 18, Ex. G. On November 11, 2013, Creditors' counsel replied, outlining reasons why it believed the stay did not apply. *Id.* ¶ 19, Ex. H. Shortly thereafter, Debtor's counsel filed a Motion for Contempt by Order to Show Cause against Nationstar. *See* Pl.'s Mot. for Contempt, ECF No. 9. The Court signed the Order to Show Cause on November 14, 2013. *See* Order to Show Cause, ECF No. 10.

On November 18, 2013, Nationstar filed an objection to the Order to Show Cause. Nationstar argues that "nothing related to the subject property passed into the Bankruptcy Estate, and thus, no automatic stay applied." *See* Opp'n , ECF No 12. Nationstar also argues that it should not be held in contempt since its interest terminated following the delivery of the Referee's Deed. *Id.* ¶ 28.

On November 19, 2013, Creditors' counsel withdrew its motion pending before the

Dutchess County Supreme Court. *See* Joint Stmt. ¶ 21, Ex. I. Also on November 19, 2013, the Court held a hearing, found that the automatic stay was violated, and awarded actual damages. On November 25, 2013, the Court entered an order granting Debtor's Motion for Contempt and awarded $2,550.00 against Nationstar. *See* Order Granting Award for Actual Damages, ECF No. 20. On November 26, 2013, counsel for the Debtor filed an application for punitive damages. *See* Mot. to Approve Appl. for Award of Punitive Damages, ECF No. 24.

On December 6, 2013, Nationstar filed an objection to the Court order and opposition to the Debtor's application for punitive damages, arguing that FNMA and not Nationstar violated the stay. *See* Opp'n, ECF No. 26. At the January 15, 2014 hearing, the Court instructed counsel for the Debtor to file a Motion for Contempt by Order to Show Cause against FNMA.

On January 31, 2014, Debtor's counsel filed a Motion for Contempt by Order to Show Cause against FNMA. *See* Mot. for Contempt, ECF No. 64. On February 5, 2014, the Court signed the Order to Show Cause. *See* Order to Show Cause, ECF No. 66. Debtor's counsel argues that FNMA violated §362(a)(1) by commencing and continuing a judicial proceeding in state court against the Debtor. *See*. Mot. for Contempt, ECF No. 64. Debtor argues that as result of the violation, Debtor's counsel was forced to file the current motion against FNMA as well as the prior Nationstar motion. *Id*. ¶ 19-21. Debtor's counsel argues that the Court should grant $5,050.00 for actual damages and additional punitive damages. *Id*.

On March 5, 2014, FNMA filed an objection and opposition to the Order to Show Cause. *See* Opp'n , ECF No 68. FNMA argues that actual and punitive damages should be denied since no possessory interest transferred into the estate and consequently no automatic stay applied. *Id*. ¶ 20-57. Alternatively, FNMA argues that any damages awarded should be offset and reduced between $7,238.70 and $26,427.79 due to Debtor not having paid to remain in the Property and

FNMA's good faith belief that no possessory interest transferred. *Id*. ¶ 58-64.

At the March 11, 2014 hearing, the Court adjourned the contempt motions to May 6, 2014. The Court ordered the parties to submit a statement of undisputed facts and party briefs. *See* Joint Stmt. Nationstar maintains that under New York Real Property Law their interest terminated upon delivery of the Referee's Deed. *See* Mem. of Law, ECF 86. FNMA argues that the Property did not transfer into the bankruptcy estate pursuant to §541. *See* Mem. of Law, ECF 87. Debtor continues to allege that the parties violated the stay by commencing and continuing a judicial proceeding in contravention of §362(a)(1). *See* Mem. of Law, ECF. 85. Debtor also maintains that her "mere possessory" interest in the property passed into the estate pursuant to § 541. *Id*. Debtor's counsel requests actual damages in the amount of $7,635.00 and additional punitive damages. *Id*. ¶ 36, Ex. C.

## Discussion

I. The Automatic Stay

The filing of a bankruptcy petition invokes the powerful protection of the automatic stay under 11 U.S.C. § 362. The automatic stay is "one of the fundamental debtor protections provided by the bankruptcy code." *Eastern Refractories Co. Inc v. Forty Eight Insulations Inc.*, 157 F3d 169, 172 (2d Cir. 1998). It is effective immediately upon the filing of a bankruptcy petition without further action. *Rexnord Holdings, Inc. v. Birdermann*, 21 F.3d 522, 527 (2d Cir. 1994). The filing also creates an estate consisting of "all legal or equitable interests of the debtor in property" at the time of filing as well as other property that may be recaptured during the bankruptcy. 11 U.S.C. § 541(a)(1); *In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.*, 522 F. Supp. 2d 569, 576 (S.D.N.Y. 2007). The scope of the stay is broad, encompassing "almost any type of formal or informal action taken against the debtor or the property of the [bankruptcy] estate." 3 Collier on Bankruptcy ¶ 362.03 (16th ed. 2014).

*a. Stay Violation under § 362(a)(1) of the Bankruptcy Code*

Pursuant to § 362(a)(1), a bankruptcy petition operates as an automatic stay to "all entities of . . . the commencement or continuation . . . of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case . . . ." 11 U.S.C. § 362(a)(1); *In re Best Payphones, Inc.*, 279 B.R. 92, 97 (Bankr. S.D.N.Y. 2002) (stating that the stay is applicable to all entities, including litigants as well as non-bankruptcy courts) (citing and quoting *Maritime Elec. Co. Inc. v. United Jersey Bank*, 959 F.2d 1194, 1206 (3d Cir. 1991)). There can be no question that the filing and serving of a writ of assistance is the commencement and continuation of a legal proceeding and a violation of § 362(a)(1). *Butler v. Bellwest Mgmt. Corp.* (*In re Butler)*, 14 B.R. 532, 534 (S.D.N.Y 1981) ("Clearly an eviction proceeding is a judicial proceeding against the Debtor within s 362(a)(1) . . . .").

On June 3, 2013, FNMA purchased the Debtor's residence at a foreclosure sale. Joint Stmt. ¶ 6, Ex. B. On October 13, 2013, the Debtor filed for chapter 13. Creditors were informed of the bankruptcy proceeding on three separate occasions: i) the Bankruptcy Court noticed Nationstar of the commencement of the bankruptcy case by mailing the § 341 notice to its counsel, Fein Such; ii) Debtor's counsel called Fein Such and informed them of the bankruptcy on October 15, 2013; and iii) Debtor's counsel faxed Fein Such and asked them not to proceed with the eviction in light of Debtor's bankruptcy filing on October 16, 2013. *Id.* ¶ 13-16. Despite acknowledging notice of the Debtor's bankruptcy filing, on October 17, 2013, Creditors' attorney, Fein Such, prepared and filed a motion for a post-foreclosure writ of assistance without obtaining relief from the automatic stay from this Court. *Id.* ¶ 17.

Creditors argue that they did not need to seek stay relief as they believed that the Debtor had no legal or equitable interest in the Property. *See* Mem. of Law ¶ 8, ECF 87. Creditors' argument that the Debtor had no interest in the Property ignores § 362(a)(1) of the Bankruptcy Code. In its most basic terms, the automatic stay prevents the "commencement or continuation of legal proceedings . . . *against the debtor*." 11 U.S.C. § 362(a)(1) (emphasis added). Nationstar, through its counsel, Fein Such, admits that it sued the Debtor because she potentially had an interest in the Property. *See* Obj. ¶ 7, ECF No. 12. ("Marija Salov was sued and served as a . . . person who may have had an occupancy interest in the premises.").[3] By filing a motion for a writ of eviction against the Debtor in state court and serving her with notice of that action, Creditors violated the automatic stay pursuant to § 362(a)(1).

   *b. Stay Violation under § 362(a)(3) of the Bankruptcy Code.*

Having found that the automatic stay was violated under § 362(a)(1), the Court has ample power to award damages pursuant to § 362(k). 11 U.S.C. § 362(k). Despite this, the Court will address whether the Creditors also violated the stay pursuant to § 362(a)(3). Section 362(a)(3) provides that "any act to obtain possession of property of the estate or of property from the estate" is a violation of the automatic stay. 11 U.S.C. § 362(a)(3). According to § 541, the estate includes "all legal and equitable interests of the debtor in property at the commencement of the case." 11 U.S.C. § 541(a)(1).

   i. Debtor's ownership interest is not relevant

It is well established that a debtor does not have an ownership interest in a property once the right to redeem is extinguished following a foreclosure sale and, as such, a debtor has no ability to prevent the delivery of the deed. *Cerrato v. BAC Home Loans Serv. (In re Cerrato)*,

---

[3] The Court notes that the original court refers to the Debtor as a "Jane Doe." This is not a true statement as the motion very clearly lists the Debtor as "Maria Salov" in its caption. *See* Joint Stmt., Ex. F.

Page **7** of **20**

504 B.R. 23, 29 (Bankr. E.D.N.Y. 2014) ("It is well established that under New York law, a debtor's right of redemption of, and interest in real property is extinguished by a foreclosure sale . . . .") (collecting cases); *Ghosh v. Fin. Fed. Sav. & Loan Ass'n*, *(In re Ghosh)*, 38 B.R. 600, 603 (Bankr. E.D.N.Y. 1984) ("[A] mortgagor or debtor in a forced sale has no legal or equitable interest in real property after a foreclosure sale, even if the formal transfer of the title has not taken place unless of course he has the right to redeem.").

Here, Creditors argue that the foreclosure proceeding extinguished the Debtor's legal and equitable interest in the estate. *See* Mem. of Law ¶ 3-4, ECF 87; *see also* Obj. ¶ 37, ECF No 12. In support of their argument, FNMA attorneys cite *In re Rodgers*. *See* Mem. of Law ¶ 4-5, ECF 87. In that case, a debtor filed for bankruptcy following the foreclosure sale of their home. *Rogers v. Cnty. of Monroe (In re Rogers)*, 333 F.3d 64, 65 (2d Cir. 2003). By filing the petition, the debtor attempted to trigger the automatic stay and prevent the county from recording and delivering the deed. *Id*. The debtor argued that she remained the owner of the property until the deed was delivered. *Id*. The county concluded that under New York Real Property Law, the property had been sold, the debtor's right of redemption had expired and the property was not part of the estate. *Id*. Accordingly, the country accepted payment, recorded and delivered the deed. *Id*. The court found that mere possession of title was insufficient to bring the property into the estate and that possession of the title was only incidental to its delivery. *Id*. at 68. The stay was not violated as the delivery of the title was ministerial. *Id.* at 69.

Creditors also argue that *Cook v. Huey* applies. 506 B.R. 174 (N.D.N.Y. 2013). Mem. of Law ¶ 6, ECF 87. In that case, the debtors' residence was sold at a foreclosure sale pre-petition. *Cook*, 506 B.R. at 175. The debtors argued that the bankruptcy court incorrectly concluded that the foreclosure sale divested them of all legal and equitable interest. *Id*. Debtors contended that

the residence should have been brought into the bankruptcy estate in accordance with their possessory interest. *Id*. 175-76.  The court concluded that under New York Real Property Law, a mortgagor whose property has been foreclosed upon continues to possess an equitable right of redemption until a foreclosure sale occurs. *Id*. at 176.  Once the foreclosure sale takes place, that right is extinguished. *Id*.

By citing these cases, Creditors argue that since the Property was sold at foreclosure, Debtor has no legal or equitable interest in the Property.  However, "property of the estate" is not as simplistic as Creditors would like to make it.  Rather, the issues at play in this proceeding are nuanced and an in-depth understanding of property rights and bankruptcy law is necessary to parse them.

    ii.    Debtor's possessory interest

Property of the estate encompasses *all* rights and interests that a Debtor may have in a property.  The right to own is a separate right from the right to possess or the right to occupy and yet, all are property of the estate.  When a debtor is attempting to redeem a piece of real property or is attempting to prevent the transfer of a deed, it is the debtor's *ownership* interest that is in question—not the *possessory* interest.

Indeed, the Second Circuit in *In re Rodgers* recognized this distinction when they stated: "Although Rodgers may have retained . . . a limited right of possession—the delivery of the deed was a ministerial act that did not impair any property interest retained by Rodgers and, thus, was not subject to the automatic stay." *Rodgers,* 333 F.3d at 69.  In other words, Rodgers maintained a possessory interest and not an ownership interest in the foreclosed property.  That possessory interest was not a strong enough interest to claw her ownership interest in the property back into the estate or prevent the delivery of a deed. *Id*. at 68 ("[T]he critical inquiry is

whether she had, under state law, any legal or equitable *ownership* interest that survived the auction.") (emphasis added); *see also Martyak v. Tioga Cnty. (In re Martyak)*, 432 B.R. 25, 40 (Bankr. N.D.N.Y. 2010) ("Since Debtor had no legal or equitable interest in the property as of the commencement of the case, the property did not become property of the estate and the auction held on August 7, 2008, did not violate the automatic stay. Any possessory interest Debtor may have in the property has remained undisturbed, as the parties stipulated that no eviction proceeding was ever commenced against Debtor.")

Here, the Debtor's ownership interest in the Property is not relevant. Debtor is not and never was the owner of the Property. As such, under state law, Debtor never had a right to redeem. She never had an interest in the delivery of the deed. What Debtor did have—and continues to have—is a possessory interest in the real property, which was not affected by the foreclosure sale and remains property of the estate.

"It is well settled that a debtor's mere possessory interest in premises, even absent any legal interest, is protected by the automatic stay." *In re Dominguez*, 312 B.R. 499, 506 (Bankr. S.D.N.Y. 2004) (citing *In re 48th Street Steakhouse*, 835 F.2d 427, 430 (2d Cir. 1987) ("A mere possessory interest in real property, without any accompanying legal interest, is sufficient to trigger the protection of the automatic stay.")). Courts in all ten circuits have found that the automatic stay protects a possessory interest in property. *See I.C.C. v Holmes Transp., Inc.,* 931 F.2d 984 (1st Cir. 1991); *Cuffee v. Atlantic Bus. & Cmty. Dev. Corp. (In re Atlantic Bus. & Cmty. Corp.)*, 901 F.2d 325 (3d Cir. 1990); *Conn. Pizza, Inc. v. Bell Atlantic-Washington, D.C., Inc. (In re Conn. Pizza, Inc.)*, 193 B.R. 217 (Bankr. D. Md. 1996); *Boystun v. Reed* 218 B.R. 840 (N.D. Miss. 1998); *Convenient Food Mart No. 144 v. Convenient Indus. America, Inc.* (*In re Convenient Food Mart No. 144, Inc.*), 968 F.2d 592 (6th Cir. 1992); *In re Wright*, 183 B.R. 541

(Bankr. C.D. Ill. 1995); *Lankford v. Advanced Equities (In re Lankford)*, 305 B.R. 297 (Bankr. N.D. Iowa 2004); *Galam v. Carmel (In re Larry's Apartment, L.L.C.)*, 249 F3d 832 (9th Cir. 2001); *In re Gagliardi*, 290 B.R. 808 (Bankr. D. Colo. 2003); *Addon Corp. v. Gaslowitz (In re Addon Corp.)*, 231 B.R. 383 (Bankr. N.D. Ga. 1999). "[A] possessory interest in real property is within the ambit of the estate in bankruptcy under Section 541, and thus the protection of the automatic stay of Section 362." *Atlantic Bus. & Cmty. Dev. Corp.*, F2d 325 at 328.

Judge Blackshear in *In re Reinhardt* discusses the fact that "federal legislative history supports the contention that Congress intended for residual possessory interest to fall within the definition of a bankruptcy estate." *In re Reinhardt*, 209 B.R. 183, 186-87 (Bankr. S.D.N.Y 1997). Judge Blackshear reasons that the failure of a 1992 bill to amend §541(b) to include residential agreements is evidence of congressional intent to include mere possession in residential property as a protected interest under the Code. *Id*. at 187 ("The failure to enact this legislation . . . is evidence of congressional intent to include mere possession in residential situations as an interest to be protected under the Code.").

This conclusion is supported by the fact that a writ of assistance proceeding had to be commenced against the Debtor in the first place.

   iii.    Writ of assistance

If the Debtor had no post-foreclosure interest, New York Real Property Law would not require a purchaser to file a writ of assistance against an occupant who refuses to surrender the property and a sheriff could immediately evict the occupant. Yet, this is not the process that is outlined under New York Property Law.

New York Real Property Law § 221 states:

> Where a judgment affecting the title to, or the possession, enjoyment or use of, real property allots to any person a distinct parcel of real property, or contains a

> direction for the sale of real property, or confirms such an allotment or sale, it also may direct the delivery of the possession of the property to the person entitled thereto, subject to the rights and obligations set forth in section thirteen hundred five of this chapter.
>
> If a party, or his representative or successor, who is bound by the judgment, withholds possession from the person thus declared to be entitled thereto, the court, by order, in its discretion, besides punishing the disobedience as a contempt, may require the sheriff to put that person into possession. Such an order shall be executed as if it were an execution for the delivery of the possession of the property.

N.Y. Real Prop. Law § 221 (McKinney 2014). Thus, pursuant to the plain language of § 221, under New York law, a writ of assistance is necessary in order to "put [the purchaser] into possession." *Id.* Nationstar, through its counsel, Fein Such, admitted that the Debtor was "sued and served as a person who may have had an occupancy interest in the premises." *See* Obj. ¶ 7, ECF No. 12.

Case law makes clear that the writ of assistance is not a ministerial act like the delivery of a deed. "A ministerial act is one that is essentially clerical in nature." *Soares v. Bockton Credit Union (In re Soares)*, 107 F.3d 969, 974 (1st Cir. 1997). "[W]hen an official's duty is delineated by, say, a law or a judicial decree with such crystalline clarity that nothing is left to the exercise of the official's discretion or judgment, the resultant act is ministerial." *Id.* New York Property Law requires a purchaser to file for a writ of assistance and provide notice and an opportunity to be heard before one's possessory interest is adversely affected by the judicial foreclosure process. *Nationwide Assoc., Inc. v. Brunne*, 216 A.D.2d 547 (N.Y. App. Div. 1995) (2d Dept.).

Before a writ of assistance will issue, the movant is required to provide a certain amount of process to a defendant to the action, such as exhibiting a deed, and the application for a writ of assistance can be denied for failure to provide this process. *See Colony Mortgage. Bankers v. Mercado*, 747 N.Y.S.2d 303, 303 (N.Y. Sup. Ct. 2002). Moreover, due process requires that a

party have notice to the initial foreclosure to enforce a writ of assistance against that party. *Citibank, N.A. v. Plagakis*, 21 A.D. 3d 393, 394-95 (N.Y. App. Div. 2005) (2d. Dept.). This is so, as the evicted party must have an opportunity to be heard before his interest in the property is adversely affected. *Id.* Furthermore, the writ of assistance is discretionary and its granting lies with the court. *Long Island City Sav. & Loan Ass'n v. Levene*, 138 N.Y.S. 2d. 573, 576 (Sup. Ct. 1995) (Kings Cnty). The court must consider the relative equities of the particular situation. *Id.*

If the Debtor was entitled to notice and an opportunity to be heard prior to the issuance of a writ of assistance, then her possessory interest must remain unaltered following a foreclosure sale. *See Burg v. City of Buffalo (In re Burg)*, 295 B.R. 698, 701 (Bankr. W.D.N.Y. 2003) ("That the petitioning creditors have need to obtain an order of eviction is itself an acknowledgment of [Debtor's] possession of the property. As an act to obtain possession of property from the estate, the eviction is subject to the automatic stay of bankruptcy.").

This Court finds the reasoning of the court in *St. Clair* persuasive. *St. Clair v. Beneficial Mortg. Co. (In re St. Clair)*, 251 B.R. 660, 665 (D. N.J. 2000). In *St. Clair*, the debtors filed their petition following the foreclosure sale and *after* the debtors had been served with a writ of possession. *Id.* The court concluded that "upon issuance of a writ of possession, any possessory interest . . . whether by tenancy at sufferance or otherwise, is expunged." *Id*; *see also Bell v. Alden Owners, Inc.*, 199 B.R. 451, 459 (S.D.N.Y. 1996) ("[The debtor] forfeited any legal right to possess the [a]partment upon the [pre-petition] issuance of the writ of eviction, and also forfeited any equitable interest arising from her de facto possession . . . .").

An even more persuasive decision, *Perl*, was issued between the Court's May 6, 2014 oral ruling and the publication of this written decision and provides a comprehensive discussion of the issues at play in this case. *Eden Place, LLC v. Perl (In re Perl)*, 2014 WL 2446317, at *1-

9 (B.A.P. 9th Cir. May 30, 2014). In *Perl*, the state court issued a writ of assistance to the appellant who purchased the appellee's property at a foreclosure sale. *Id.* at *1. Soon thereafter, the appellee filed a bankruptcy petition. *Id.* Despite having notice of the bankruptcy action, the appellant executed the writ of assistance. *Id.* at *2. Similar to the present case, appellant argued that following the foreclosure sale, delivery of the deed and issuance of the writ of assistance the appellee no longer had a legal or equitable interest in the property. *Id.* The court concluded that the appellee still maintained a possessory interest even after the issuance of the writ of possession and its execution was a willful violation of the automatic stay. *Id.* at *4-9 ("[T]he strength of one's interest is not determinative; . . . if debtor or the estate has 'any' interest the question becomes: is the creditor's action violative of the stay. Creditor's action may be violative even if a minimal interest, such as a squatter's or possessory interest, is held by the debtor or the estate.").

In this case, the writ of assistance was filed post-petition. The Debtor's four-year "mere possessory" interest, even without a legal interest, is still an interest, and thus falls within the meaning of property of the estate. This conclusion, that the Debtor maintained a possessory interest in the Property, is consistent with New York state law dating at least as far back as 1890, as is indicated from the following discussion:

> The writ of assistance, so far as foreclosures are concerned, is an old chancery writ . . . . It may be had to enforce any judgment or order awarding the possession of real property, other than the common judgment, in a direct action for land. A writ of assistance is, in ordinary cases, the process for giving possession of land under an adjudication, and will be granted upon the sale being confirmed, and proof that the purchaser has received a deed of conveyance from the master, which has been shown to the party in possession, accompanied by a demand of possession, which has been refused.
>
> ….

> The judgment herein cannot be enforced in respect to possession by execution, and the relief required must be obtained by this writ.

*O'Connor v. Schaeffel*, 19 N.Y.S. 737, 737 (N.Y. City Court 1890) (internal citations omitted). Accordingly, when Creditors moved to obtain a writ of assistance seeking to divest the Debtor of her possessory interest in the Property, that interest had already become property of the estate by the filing of the bankruptcy petition. Therefore, it was the estate's possessory interest in the Property that Creditors were attempting to divest and, thus, the automatic stay was violated pursuant to §362(a)(3).

II.    Creditor has a Duty to Obtain Relief from the Stay.

The Court does not believe that finding a stay violation in this case places any higher burden upon creditors than is provided by the Bankruptcy Code. The fact is that Creditors could have avoided this result had they heeded Debtor's counsel's warnings and sought relief from the automatic stay in this Court. "[I]t is not the debtor's responsibility to take action that ensures that she received protection of the automatic stay; rather the creditor bears the burden of seeking relief from the automatic stay before taking post-petition collection actions." *In re Braught*, 307 B.R. 399, 402 (Bankr. S.D.N.Y. 2004). "A motion for stay relief is not a mere formality that may be ignored in a party's discretion." *In re Dominguez*, 312 B.R. at 505.

"[W]hile . . . [possessory] rights on the part of the debtor . . . trigger the applicability of the automatic stay in the first instance, they are not determinative of the fundamentally different question as to whether the stay, once triggered, should be modified or terminated for cause." *In re Éclair Bakery Ltd.*, 255 B.R. 121, 134 (Bankr. S.D.N.Y. 2000). "Congress has declared that actions to terminate, annul, or modify the automatic stay are core bankruptcy proceedings. Consequently, it is undisputed that *only* a bankruptcy court has jurisdiction to terminate, annul or modify the automatic stay." *In re Dominguez*, 312 B.R. at 505 (quoting *Siskin v. Complete*

Page **15** of **20**

13-37269-cgm    Doc 88    Filed 06/06/14    Entered 06/06/14 10:24:46    Main Document
Pg 16 of 20

*Aircraft Serv., Inc. (In re Siskin)*, 258 B.R. 554, 561-62 (Bankr. E.D.N.Y. 2001) (emphasis added).

Simply put, the fact that cause existed to lift the stay is not relevant to a determination as to whether the stay has been violated. *See Perl*, 2014 WL 2446317, at *6 ("A distinction exists between the analyses required for stay relief matters and violation of stay matters.").

III.  Actual and Punitive Damages Against Nationstar and FNMA

    *a.  Nationstar and FNMA are Jointly and Severally Liable*

Nationstar argues that it had no involvement in the violation of the automatic stay as its interest in the Property transferred to FNMA four months prior to the occurrence of the violation. Nationstar argues that under New York Property law, the purchaser of a foreclosed property is permitted to file for a writ of assistance under the foreclosure action caption so long as any person sought to be dispossessed was a party to the underlying foreclosure action. Nationstar in support of its argument cites *Lincoln First Bank v. Polishuk*, 86 A.D.2d 652 (N.Y. App. Div. 1982).

*Lincoln First Bank* does not adequately address Nationstar's argument. Rather, the case contains one sentence in which the court finds that the motion for a writ of assistance is proper, despite the caption not being under the name of the purchaser. *Id.*

Despite the fact that the parties agree in the statement of undisputed facts that FNMA prepared the motion for post-foreclosure writ of assistance, this Court cannot definitively conclude that Nationstar was not the movant. *See* Joint Stmt. ¶ 16. Nationstar is the named Plaintiff in the post-petition action. Moreover, the Creditors share counsel and it is unclear at this time whether Fein Such was acting on behalf of Nationstar, FNMA, or both Creditors at the time it filed the motion. There is simply no way for the Debtor or the Court to determine who,

ultimately, is liable. Rather, the Creditors must come forth with evidence showing one or the other made the ultimate decision.

Accordingly, the Court holds both Nationstar and FNMA jointly and severally liable—subject to one or the other bringing an action for exculpation. If FNMA believes that it is the responsible party, it may voluntarily assume liability for the stay violation.

    *b. Actual Damages pursuant to § 362(k)*

Pursuant to § 362(k)(1), "an individual injured by any willful violation of the stay provided by this section shall recover actual damages, including costs and attorney's fees, and in appropriate circumstances, may recover punitive damages." 11 U.S.C. § 362(k)(1). The party moving for damages bears the burden of proof. *In re Pachman*, 2010 WL 1489914, at *2 (Bankr. S.D.N.Y. Apr. 14, 2010) (citation omitted). Actual damages include reasonable attorney fees for prosecuting a stay violation. *Id.*

It is clear that Creditors, through their counsel, were aware that an automatic stay was in effect. On October 15 2013, Creditors' counsel received a call from Debtor's counsel advising them of the filing. *See* Joint Stmt. ¶ 14. On October 16, 2013, Debtor's counsel transmitted a fax to Creditors' counsel stating the same. *See id.* ¶ 15. Creditors' counsel reviewed the bankruptcy petition and concluded that the property did not enter the estate. *See* Opp'n ¶ 23, ECF No 12. On October 17, 2013, Creditors' counsel prepared a motion for a writ of assistance and sent the same for service and filing. *See* Joint Stmt. ¶ 16.

The fees sought by Debtor's counsel are reasonable. An hourly rate of $275 per hour for attorney time and $100 per hour for legal assistant time is at or below the average rate for legal professionals in this district. *See* Mem. of Law ¶ 36, ECF. 85, Ex. C. Due to the complexity of the case, the hours spent by Debtor's counsel are reasonable. *Id.*

Accordingly, Nationstar and FNMA are jointly and severally liable for actual damages in the amount of $7,635.00.

      *c. Nationstar and FNMA are Jointly and Severally Liable for Punitive Damages*

The Second Circuit has stated, where a party has willfully violated the automatic stay,

> [a]n additional finding of maliciousness or bad faith on the part of the offending creditor warrants the further imposition of punitive damages . . . . This standard encourages would be violator to obtain declaratory judgments before seeking to vindicate their interests in violation of an automatic stay, and thereby protect debtors' estates from incurring potentially unnecessary legal expenses in prosecuting stay violations.

*Crysen/Montenay Energy Co. v. Esselen Assoc., Inc. (In re Crysen/Montenay Energy Co.)*, 902 F.2d 1098, 1105 (2d Cir. 1990).

> [When] a person takes a deliberate act . . . in violation of a stay, which the violator knows to be in existence . . . such an act need not be performed with specific intent to violate the stay. Rather, so as long as the violator possessed general intent in taking actions which have the effect of violating the automatic stay, the intent required . . . is satisfied.

*Sucre v. MIC Leasing Corp. (In re Sucre)*, 226 B.R. 340, 349 (Bankr. S.D.N.Y. 1998) (internal quotations omitted).

In determining an award for punitive damages, the Court is guided by factors set out in *In re B. Cohen & Sons Caterers*, *Inc*.: "(1) the nature of the defendant's conduct; (2) the defendant's ability to pay; (3) the motives of the defendant; and (4) any provocation by the debtor." 108 B.R. 482, 484 (E.D. Pa. 1989) (citations omitted). As a fifth factor, some courts have considered the defendant's level of sophistication. *In re Pachman*, 2010 WL 1489914 at *4; *In re Gagliardi*, 290 B.R. 808, 813 (Bankr. D. Colo. 2003).

Here, FNMA was aware of the bankruptcy filing. *See* Joint Stmt ¶ 13-15. Rather than seek to have the automatic stay lifted, Creditors unilaterally concluded that the property was not part of the estate and proceeded with filing and serving a motion for a writ of assistance. *See*

Opp'n ¶ 23, ECF No 12. In response to Debtor's counsel's protestations that they had violated the stay, Creditors' counsel wrote Debtor's counsel a letter which stated:

> Unfortunately, I do not agree with your broad conclusion that the §362(a) automatic stay applies in this matter . . . .
>
> . . . .
>
> [Y]ou are not the first to try this gambit on a post-foreclosure eviction that I have handled. Your threat of a Motion for Contempt does not change the clearly established law. Indeed, I caution you that such a motion would likely violate Bankruptcy Rule 9011.

*See* Joint Stmt. ¶ 19, Ex. H. As to the first factor, Creditors' conduct and threats in this case are egregious. As to the second factor, Creditors are large financial organizations capable of paying damages. As to the third factor, Creditors' motive was to evict the Debtor from the residence despite the bankruptcy proceeding; Creditors did not even mention that there was a pending bankruptcy case in their state court motion papers. *Id.* ¶ 16, Ex. F. As to the fourth factor, there is no evidence of provocation by the Debtor. While FNMA does allege that Debtor's daughter-in-law called its counsel and made "veiled threats," such conduct does not rise to the level of provocation and certainly does not excuse a violation of the automatic stay by these large organizations. *See* Opp'n ¶ 12, ECF No 68. Moreover, FNMA states that the day after the initial phone call, Debtor's daughter-in-law called back and advised them that she did not represent the Debtor. *Id.* at 13. Debtor also called stating same. *Id.* at 15. As to the fifth factor, Creditors are both sophisticated corporations represented by counsel and capable of understanding the consequences of their actions.

From the letter addressed to Debtor's counsel, it is clear that Creditors believed that they, and not the Court, had the authority to determine whether the automatic stay was in effect. *See* Joint Stmt. ¶ 19, Ex. H. By making such a determination, Creditors ran the risk that their actions

would be declared void *ab initio* and that they would be subject to damages. *In re Braught*, 307 B.R. 399, 404 (Bank. S.D.N.Y 2004); *see also Perl*, 2014 WL 2446317, at *9 ("Whether [creditor] believed in good faith that it had a right to the Residence is irrelevant to the analysis of whether its act was intentional.").

Creditors could have prevented this outcome by doing a very simple thing—filing a motion for relief from the automatic stay prior to proceeding in state court against the Debtor. Instead, Creditors unilaterally concluded that no stay was in effect and the Debtor had no interest in the property. This was an incorrect assumption.

Accordingly, Debtor has met the requirements for punitive damages.

## **Conclusion**

For the foregoing reasons, Nationstar and FNMA are jointly and severally liable and are directed to pay Debtor's actual damages in the amount of $7,635.00. As for punitive damages, the Court awards $10,000.00, jointly and severally, in the hope that Creditors will think twice about not seeking an order from this Court in future cases. Debtor's counsel should submit an order consistent with this memorandum decision.

Dated: Poughkeepsie, New York
      June 6, 2014                 /s/ Cecelia G. Morris
                                      CECELIA G. MORRIS
                                      CHIEF UNITED STATES BANKRUPTCY JUDGE